## McKINNEY *v.* GILLMORE.

1. BILLS AND NOTES—HOLDER IN DUE COURSE.

   A holder in due course as defined by the negotiable instruments law is a holder who has taken an instrument that is complete and regular upon its face; before it was overdue; without notice that it had been previously dishonored, if such was the fact; in good faith and for value, and without notice of any infirmity in the instrument or defect in title of the negotiator (2 Comp. Laws 1929, § 9301).

2. SAME—CONSIDERATION—SURRENDER OF STOCK.

   Plaintiff's surrender of stock in a corporation was sufficient consideration for the transfer to her of notes which had been given by the purchasers of an interest in the corporation's business and which notes were complete and regular on their face and were taken by her in good faith before their due date; hence she was a holder in due course where it does not appear that she knew of any infirmity in the notes or knowledge of such facts that the taking of the notes amounted to bad faith (2 Comp. Laws 1929, §§ 9301, 9305).

---

Destruction of a legal relation as consideration, see 1 Restatement, Contracts, § 75.

3. SAME—GOOD FAITH—CONJECTURE—DIRECTED VERDICT.

> In an action on promissory notes, the good faith of the holder may not be defeated by mere conjecture, surmises, and untenable assertion, and where the evidence on said question was insufficient to take it to the jury, a verdict was properly directed for plaintiff (2 Comp. Laws 1929, §§ 9301, 9305).

4. SAME—NOTICE OF DEFECT—EVIDENCE.

> Fact that plaintiff in an action on promissory notes was the wife of one of the original owners of a sanitarium and had done some work on the books *held*, not sufficient as a matter of law to rebut the evidence that at the time she surrendered her stock in the corporation owning the sanitarium for the notes, the day they were executed, and that she had no notice of any infirmity in the notes or defect in the title of the person negotiating them; hence the defense of partial failure of consideration was not available to defendant (2 Comp. Laws 1929, §§ 9301, 9305).

5. FRAUD—DISCOVERY—PARTIAL PAYMENT OF PURCHASE PRICE—WAIVER.

> In action on promissory notes given in payment for sanitarium property, evidence warranted trial judge in directing verdict for plaintiff on ground that defendants had elected to stand by the contract and had waived alleged fraud by paying some of the notes.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted October 5, 1943. (Docket No. 3, Calendar No. 42,374.) Decided November 29, 1943.

Assumpsit by Frances E. McKinney against Walter H. Gillmore and wife on promissory notes. Directed verdict and judgment for plaintiff. Defendants appeal. Affirmed.

*White & White,* for plaintiff.

*Howard, Howard & Howard,* for defendants.

SHARPE, J. This is an appeal from a verdict directed against defendants of $3,460.50 on three promissory notes of $1,000 each, dated May 17, 1940.

The facts are as follows: During the year of 1934, Clayton R. McKinney, husband of plaintiff, and his brother, Harry McKinney, started a sanitarium at Centerville, Michigan. The business was incorporated and plaintiff owned $5,000 worth of stock in the corporation. The corporation was dissolved after the execution of the above notes.

In 1940, Dr. Walter H. Gillmore, defendant, became interested in the purchase of the sanitarium and, as a result of some investigation and further negotiation, purchased Clayton R. McKinney's undivided one-half interest for the sum of $20,000. The contract to purchase the one-half interest of Clayton R. McKinney was executed May 17, 1940. The contract for the purchase of this property provided for the sum of $1,000 to be paid in cash and serial promissory notes of $1,000 each, maturing monthly, were executed by Dr. Gillmore and wife for the balance of the purchase price. In December, 1940, Harry McKinney sold his undivided one-half interest in the sanitarium to the defendants for the sum of $20,000 payable in monthly instalments.

In March, 1940, Dr. Gillmore became a member of the sanitarium staff. At this time the gross income of the sanitarium varied between $2,000 and $3,500 a month. During the first year after the purchase, Dr. Gillmore paid out approximately $3,500 in replacements and improvements on the property.

In January, 1942, one Alois T. Daniels began suit in the circuit court of St. Joseph county against Clayton McKinney, Frances McKinney, Harry E. McKinney and Florence McKinney. Writ of garnishment was served upon Walter H. Gillmore and he made a disclosure under oath that at the time of the garnishment proceedings he was indebted to Clayton R. McKinney and Frances McKinney, his wife, in the sum of $3,000 pursuant to the terms of the agreement to purchase the sanitarium and

to Harry E. McKinney and Florence McKinney, his wife, in the sum of $546.99 pursuant to the terms of a similar agreement.

The notes upon which the present action is based became due respectively 18, 19 and 20 months after their execution. Plaintiff became the owner of the notes on the day of their execution and, upon the failure of defendants to pay the same when due, began the present action. Defendants refused to pay and claim failure of consideration, breach of warranty and misrepresentation.

The cause came on for trial and at the conclusion of the proofs, plaintiff made a motion for a directed verdict on the grounds that there was no evidence connecting plaintiff with any fraud in the sale of the property; that plaintiff is a holder in due course of the notes; that the fraud complained of was known by defendants prior to October 17, 1941; and that by their actions defendants waived the alleged fraud and ratified the agreement by payment of certain notes. The trial court directed the jury to bring in a verdict for plaintiff on the theory that defendants had waived the fraud and ratified the agreement.

Defendants appeal and urge that plaintiff is not a holder in due course; that a partial failure of consideration may be asserted as a defense *pro tanto;* and that in an action on three promissory notes of a series of five, the payment of the first two of the notes does not waive the right to a defense of fraud and failure of consideration.

A holder in due course as defined by the negotiable instruments law (2 Comp. Laws 1929, § 9301 [Stat. Ann. § 19.94]) is a holder who has taken the instrument under the following conditions:

"First, That it is complete and regular upon its face;

''Second, That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

''Third, That he took it in good faith and for value;

''Fourth, That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.''

In the case at bar, the notes were complete and regular upon their face. They became the property of plaintiff before their due date and were taken in good faith and for value. The surrender of plaintiff's stock in the sanitarium corporation was sufficient consideration for the transfer of the notes to her.

Section 9305, 2 Comp. Laws 1929 (Stat. Ann. § 19.98), provides:

''To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.''

In *Lincoln Investment Co.* v. *Metros,* 257 Mich. 215, we held that in order to constitute notice of infirmity in an instrument or defect in title, the person to whom it was negotiated must have had actual knowledge of such infirmity or defect, or knowledge of such facts as amounted to bad faith. In *Tiscornia* v. *Bard,* 240 Mich. 270, we held that it requires something more than conjecture, surmises and untenable assertions to defeat the *bona fides* of a plaintiff in an action to recover on a promissory note.

In the case at bar, plaintiff was the owner of $5,000 worth of stock in the corporation which she

surrendered when she received the notes. It cannot be said that such transfer was not a sufficient consideration for the transfer of the notes to her. The evidence is positive that the notes were assigned to her on the day of their execution. In our opinion the record fails to support the charge that she knew of any infirmity in the notes. The fact that she was the wife of one of the original owners of the sanitarium and did some work on the books is not sufficient proof to rebut the evidence that at the time the instruments were negotiated she had no notice of any infirmity in the notes or defect in the title of the person negotiating them.

The trial court directed a verdict in favor of plaintiff upon the theory that defendants had elected to stand by the contract and waive the alleged fraud. We think the facts in this case warrant such action. See *Dinius* v. *Bolibrzuch*, 270 Mich. 618, and *Monroe* v. *Hoffman*, 276 Mich. 281. As indicated above, the trial court could have directed a verdict for plaintiff on the theory that she was a holder in due course.

The judgment is affirmed, with costs to plaintiff.

Boyles, C. J., and Chandler, North, Starr, Wiest, Butzel, and Bushnell, JJ., concurred.